IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ALEX MOTEVOSIAN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DAVID RAMINICK, an individual,<br><br>Defendant | Case No. 2:26-cv-10205<br><br>Honorable_____<br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL** |

Stephen J. Hulst (P70257)
RHOADES MCKEE, PC
Counsel for Plaintiff
55 Campau Avenue SW, Suite 300
Grand Rapids, MI 49503
616-233-5155
sjhulst@rhoadesmckee.com

COMES NOW, Plaintiff ALEX MOTEVOSIAN, an individual, through his attorneys of record and brings this action against Defendant DAVID RAMINICK as follows:

**PARTIES AND VENUE**

1. Plaintiff ALEX MOTEVOSIAN ("Plaintiff") is, and at all times herein mentioned was, an individual who resided in the City of Tarzana, Los Angeles

1

County, State of California, at the time of the events at issue and, at all relevant times, Plaintiff was and is a shareholder of Proficy Digital Inc.

2. Defendant DAVID RAMINICK ("Defendant") is, and at all relevant times was, an individual who resides in the state of Michigan and a shareholder of Proficy Digital Inc.

## VENUE AND JURISDICTION

3. Pursuant to 28 U.S.C. § 1332, the Court has original jurisdiction over this civil action because the Plaintiff and Defendant are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant resides in the Eastern District of Michigan.

5. There is a case between these parties (which does not include the majority of claims herein) in Los Angeles Superior Court, Case No. 25STCV38348; however, Plaintiff is voluntarily dismissing that case and will pursue the below claims in this Court.

## SUMMARY OF ALLEGATIONS

6. On or about December 2022, Plaintiff and Defendant filed Articles of Incorporation in the State of Michigan for their company named Proficy Digital Inc. (the "Corporation"). The Corporation operates as a marketing services provider to automotive dealerships, delivering data-driven advertising supported by advanced

2

analytics, predictive modeling, and automated execution across major digital media platforms.

7. At the outset, both Plaintiff and Defendant executed Bylaws for the Corporation. Later, in March 2023, Amended and Restated Bylaws were executed ("Amended Bylaws"). Attached hereto as Exhibit A is a true and correct copy of the Amended Bylaws.

8. Plaintiff and Defendant are the sole voting shareholders and each own 50 percent of the Corporation. Each person owns 1000 Class A Voting Shares. Plaintiff and Defendant are the only two (2) directors of the Corporation. No other voting shareholder exists in the Corporation.

9. Plaintiff and Defendant are the sole officers of the Corporation. Plaintiff is the President and Chief Operating Officer ("COO"), and Defendant is the Chief Executive Officer ("CEO") and Treasurer.

10. In March 2023, Plaintiff and Defendant executed a Buy-Sell Agreement for Founders ("Buy-Sell Agreement") relating to their shares of the Corporation. Attached hereto as Exhibit B is a true and correct copy of the Buy-Sell Agreement.

11. From December 2022 to November 2025, the Corporation was dependent on third-party software for its operation. Said software cost the Corporation approximately $17,500 per month to license and was required for the Corporation to operate. During this period, Plaintiff spearheaded the creation of the

Corporation's own proprietary software which was superior to the third-party software. Plaintiff acted as the conceptual architect and general contractor for the Corporation's eventual proprietary software. The Corporation's software was completed and launched on November 4, 2025. It saves the Corporation approximately $16,000 per month in eliminated licensing fees and allows for exponential profit growth upon the scaling of the business. The Corporation's software is the first of its kind in unifying commercial-ready content creation, ad creation, deployment, and campaign management in a single system.

12. On December 3, 2025, Plaintiff made a request for pay and expense parity so that Plaintiff and Defendant would both receive similar salary and comparable fringe benefits. Defendant disagreed with Plaintiff's request and responded to said requests by eliminating Plaintiff's access to the payroll system on December 9, 2025.

13. Later, on December 9, 2025, Defendant sent correspondence to Plaintiff entitled "Formal Performance Request and Notice of Cure Period" pursuant to Section 1.5 of the Buy-Sell Agreement ("Pretextual Notice"). Said document recited several alleged minor deficiencies with Plaintiff's performance and required two (2) items to be completed by January 8, 2026: (1) provide CI, a company headed by Miles Romney, with access to the Corporation's proprietary software which Plaintiff had spent approximately three years developing for the Corporation; and (2) allow

4

all company expenses, transactions and agreements to be reviewed, approved and processed by the company Treasurer (Defendant). Plaintiff was given thirty (30) days to comply with the two (2) items or Defendant would consider the non-compliance to be "Negative Triggering Event" as defined under the Buy-Sell Agreement. Attached hereto as Exhibit C is a true and correct copy of the Pretextual Notice.

14. On December 10, 2025, Plaintiff responded to the Pretextual Notice refuting the assertions contained therein and questioning the necessity of CI's involvement and/or value to the Corporation as well as making the President subordinate to the Treasurer. Attached hereto as Exhibit D is a true and correct copy of Plaintiff's Response to the Pretextual Notice.

15. The Buy-Sell Agreement defines a Negative Triggering Event as follows: "A Shareholder's material failure to fulfill or perform any duties or obligations as an employee of the Corporation" which is not cured in thirty (30) days. Exh. B, Buy-Sell Agreement, Section 1.5(b).

16. The two items demanded that purport to constitute a "Negative Triggering Event" under the Buy-Sell Agreement do not and could not be considered a Negative Triggering Event because neither of the two (2) items demanded to be performed in the Pretextual Notice constitutes a material failure to fulfill or perform any duties or obligations as an employee. The Pretextual Notice was created by

Defendant in an effort to wrest away Plaintiff's control and ownership of the Corporation.

17. In December of 2025, Defendant took a series of actions wherein Defendant breached his fiduciary duty to Plaintiff, including, but not limited to, the following: (1) Eliminated Plaintiff's access to the Corporation's payroll system; (2) Engaged outside vendors on behalf of the Corporation without Plaintiff's agreement and/or execution of the contract engaging same; and (3) Hired employees over Plaintiff's objections.

18. The Corporation's Amended Bylaws (Exh. A) provide the following in section 9.2:

> "When the execution of a contract, instrument or document has been authorized but no officer or agent has been specified to execute it, the signatures of any two of the Chief Executive Officer, President, Vice President, Secretary or Treasurer shall be necessary to execute the instrument or document on behalf of the Corporation."

19. Importantly, the Amended Bylaws (Exh. A) provide the following in section 7.1:

> "Any of these offices may be held by the same person, but no officer may execute, acknowledge, or verify an instrument in more than one Capacity."

20. In light of the foregoing requirements for the valid execution of contracts, Defendant has consistently violated the Amended Bylaws and breached his fiduciary duty to Plaintiff by taking unilateral unauthorized action on multiple

6

occasions, including the engagement of an outside consultant, CI, to evaluate the Corporation's proprietary software without Plaintiff's consent and without Plaintiff's execution of the retainer letter for same. Defendant's hiring of employees over Plaintiff's objections and without any consultation with Plaintiff also violates the Amended Bylaws.

21. On January 9, 2026, Defendant made the false, pretextual, and self-interested determination that Plaintiff's alleged non-compliance with the demands contained in the Pretextual Notice constituted a Negative Triggering Event under the Buy-Sell Agreement. On that same day, Defendant purported to fire Plaintiff from his position as President and remove Plaintiff from the Board of Directors, and Defendant proffered Plaintiff a buyout of Plaintiff's shares for no reason other than to steal the assets of the Corporation for himself. Defendant also installed CI's President, Miles Romney – who Plaintiff found out was Defendant's close personal friend – as the "new" Chief Technology Officer ("CTO") of the Corporation.

22. Also on January 9, 2026, upon information and belief, Defendant stole the money from the Corporation's bank account. The Corporation's bank account, which typically held more than $1 million, dropped to zero balance as of January 2026, on or after the date of Plaintiff's alleged termination. Plaintiff has not been informed where these funds went.

23. Defendant also unilaterally stopped all compensation, benefits, and distributions to Plaintiff.

24. Further, Defendant eliminated Plaintiff's access to the Corporation's computer systems and records by threatening the Corporation's employees with termination if the employees did not eliminate Plaintiff's access to said systems and records.

25. In addition, upon information and belief, Defendant utilized the Corporation's counsel to provide advice to Defendant, personally, regarding the strategy and procedure for ousting Plaintiff under the Buy-Sell Agreement.

26. Defendant's motives for these actions are clear. Defendant seeks to steal the Corporation's software that Plaintiff completed in November 2025 after years of hard work on behalf of the Corporation. In fact, the software which Plaintiff recently completed is the main asset that generates income for the Corporation. Defendant plans to implement this plan through the installation of his close personal friends such as Miles Romney, the purported consultant who was going to "evaluate" the software and who Defendant later installed as the Corporation's "new" CTO, and Defendant's friend Hal Widlansky, who Defendant had previously hired to "advise" Defendant through his positions on the Corporation's Board of Advisors.

## COUNT I: SHAREHOLDER OPPRESSION

27. Plaintiff hereby re-alleges and incorporates the preceding paragraphs as though set forth in full herein.

28. Plaintiff is a shareholder of the Corporation.

29. Defendant has gained control of the Corporation through a series of pretextual and self-interested actions. Defendant falsely contends a Negative Triggering Event under the Buy-Sell Agreement has occurred. Defendant used said pretext to terminate Plaintiff from his position as President and as a member of the Board of Directors.

30. Defendant's actions were illegal, fraudulent, or willfully unfair and oppressive to the Corporation or to Plaintiff as a shareholder because no Negative Triggering Event occurred. Defendant has intentionally concocted this entire situation to wrest away any ownership and/or control of the Corporation from Plaintiff without cause and for his own personal enrichment.

31. On January 9, 2026, Defendant made the false, pretextual, and self-interested determinations that Plaintiff's alleged non-compliance with the demands contained in the Pretextual Notice constituted a Negative Triggering Event under the Buy-Sell Agreement. On that same day, Defendant purported to fire Plaintiff from his position as President and remove Plaintiff from the Board of Directors, and he

proffered Plaintiff a buyout of Plaintiff's shares for no reason other than to steal the assets of the Corporation for himself.

32. The termination of Plaintiff's employment has deprived Plaintiff of his salary and benefits which he enjoyed as an employee, which were expected given Plaintiff's status as a co-founder and owner of the Corporation and his shareholder interest and right to manage the Corporation. The unilateral termination of Plaintiff also deprived Plaintiff of his shareholder rights and interests, such as his ability to participate in management and his right to vote. Moreover, Defendant's misguided invocation of a Negative Triggering Event has deprived Plaintiff of his distributions as a shareholder. Defendant also installed CI's President, Miles Romney, as the "new" CTO of the Corporation.

33. Also on or about January 9, 2026, upon information and belief, Defendant stole the money from the Corporation's bank account. Defendant further eliminated Plaintiff's access to the Corporation's computer systems and records by threatening the Corporation's employees with termination if the employees did not eliminate Plaintiff's access to said systems and records.

34. Defendant's campaign of oppressive and willfully unfair actions against Plaintiff began even earlier. In December 2025, the Defendant took a series of actions wherein Defendant breached his fiduciary duty to Plaintiff and oppressed Plaintiff, including, but not limited to the following:

10

    a. Eliminated Plaintiff's access to the Corporation's payroll system;

    b. Engaged outside vendors on behalf of the Corporation without Plaintiff's agreement and/or execution of the contract engaging same;

    c. Threatened to terminate Plaintiff's employment without cause to freeze him out of the Corporation;

    d. Created unreasonable conditions on Plaintiff's employment, such as forcing Plaintiff to breach his fiduciary duties to the Corporation in order to keep his employment;

    e. Failed to act with candor and disclose strategies, plans, and self-interested parties and/or close personal friends;

    f. Deprived Plaintiff of participating in the management and operations of the Corporation;

    g. Violated various provisions of the Corporation's Bylaws; and

    h. Diluted Plaintiff's shareholder equity and interest by making unilateral decisions and hiring or engaging self-interested personal friends without Plaintiff's consent.

35. Moreover, Defendant has also engaged in a course of self-dealing. For example, Defendant has charged the Corporation for Defendant's use of private country clubs.

36. Defendant's actions were the actual and proximate cause of Plaintiff's damages, which are more than the jurisdictional minimum.

## COUNT II: BREACH OF CONTRACT

37. Plaintiff hereby re-alleges and incorporates the preceding paragraphs as though set forth in full herein.

11

38. In March 2023, Plaintiff and Defendant executed the Amended Bylaws and the Buy-Sell Agreement.

39. Defendant breached the Amended Bylaws on multiple occasions by improperly engaging vendors without consent or authorization from Plaintiff; i.e., engaging an outside consultant to evaluate the Corporation's software without the consent of Plaintiff and hiring employees without the consent or authorization from Plaintiff.

40. Defendant has made it plain that he does not believe that he needs any advice and consent from Plaintiff to execute contracts and/or hire additional employees. Defendant seeks to run the Corporation without any input from Plaintiff.

41. Defendant's failure to honor the processes contained in the Bylaws constitutes a breach of the Bylaws as well as a breach of fiduciary duty.

42. Defendant breached the Buy-Sell Agreement by falsely and pretextually declaring a Negative Triggering Event without cause and using said false determination to categorize Plaintiff's shares as non-voting. Defendant then breached both the Amended Bylaws and Buy-Sell Agreement by purportedly and wrongly firing Plaintiff and removing Plaintiff from the Board of Directors without cause.

43. Defendant also failed to follow the procedures regarding the exercise of the option to allegedly purchase Plaintiff's shares pursuant to the terms of the Buy-Sell Agreement.

44. Defendant's actions were the actual and proximate cause of Plaintiff's damages, which are more than the jurisdictional minimum.

## COUNT III: BREACH OF FIDUCIARY DUTY

45. Plaintiff hereby re-alleges and incorporates the preceding paragraphs as though set forth in full herein.

46. Plaintiff and Defendant are the sole shareholders of the Corporation, which is closely held.

47. Defendant refuses to abide by the Bylaws and/or consult with Plaintiff regarding the management of the Corporation. Defendant's actions include the following, as well as those listed in paragraph 33: (1) Eliminated Plaintiff's access to the Corporation's payroll system; (2) Employed a Board of Advisors which are essentially Defendant's friends and acquaintances without any agreement of Plaintiff; (3) Attempted to engage outside vendors without Plaintiff's agreement and execution of the contract as required by the Amended and Restated Bylaws; and (4) Hired employees over Plaintiff's objections.

48. Moreover, Defendant has also engaged in a course of self-dealing. Defendant's execution of the irrevocable proxy is a self-interested transaction. Defendant has charged the Corporation for Defendant's use of private country clubs.

49. On December 9, 2025, Defendant sent correspondence to Plaintiff entitled "Formal Performance Request and Notice of Cure Period" pursuant to Section 1.5 of the Buy-Sell Agreement ("Pretextual Notice"). Said document recited several alleged minor deficiencies with Plaintiff's performance and required two (2) items to be completed by January 8, 2026: (1) provide CI, a company headed by Defendant's personal friend Miles Romney, with access to the Corporation's proprietary software which Plaintiff had spent approximately three years developing for the Corporation; and (2) allow all company expenses, transactions and agreements to be reviewed, approved and processed by the Corporation Treasurer.

50. On January 9, 2026, Defendant made the false, pretextual and self-interested decision that Plaintiff's alleged non-compliance with the demands contained in the Pretextual Notice constituted a Negative Triggering Event under the Buy-Sell Agreement. On that same day, Defendant purported to fire Plaintiff from his position as President and remove Plaintiff from the Board of Directors, and he proffered Plaintiff a buyout of Plaintiff's shares for no reason other than to steal the assets of the Corporation for himself.

51. Without Court intervention, Plaintiff believes that Defendant will succeed in essentially stealing the Corporation from Plaintiff without any cause whatsoever.

52. Defendant's actions were the actual and proximate cause of Plaintiff's damages, which are more than the jurisdictional minimum.

## COUNT IV: FRAUD

53. Plaintiff hereby re-alleges and incorporates the preceding paragraphs as though set forth in full herein.

54. In December 2022, Defendant materially misrepresented to Plaintiff that Defendant wanted to enter into business in good faith with Plaintiff. Defendant knew the statement was false at the time that said statement was made.

55. Defendant had no intention to do business in good faith with Plaintiff. Defendant made this statement because he wanted to utilize Plaintiff's talents to develop software. Upon completion of the software, Defendant stole said software from Plaintiff within forty (40) days of its launch via the pretextual actions as described above.

56. Plaintiff justifiably and actually relied on Defendant's representations to his detriment.

57. Defendant's actions were the actual and proximate cause of Plaintiff's damage and Plaintiff seeks recission of all of the formation documents and contracts and the awarding of a copyright in his favor solely.

### COUNT V: JUDICIAL DISSOLUTION

58. Plaintiff hereby re-alleges and incorporates the preceding paragraphs as though set forth in full herein.

59. Plaintiff seeks dissolution of the Corporation because the shareholders cannot agree by the required vote on the material matters respecting management of the Corporation's affairs.

60. Defendant's actions have created a situation where further operation of the Corporation is not possible.

### PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. That judgment enter against Defendant and Defendant be ordered to pay Plaintiff for all damages and relief to which he is entitled, including payment for the full value of Plaintiff's ownership interest;

2. All compensatory damages awardable under the law;

3. Declaratory relief;

4. Prejudgment interest;

5. Injunctive relief including but not limited to Temporary Restraining

Order and/or Preliminary Injunction;

6. Dissolution and/or other equitable remedies as allowed by MCL 450.1489;

7. Punitive and/or exemplary damages;

8. Attorney fees; and

9. That Plaintiff be awarded such other relief, equitable or legal, that the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby respectfully requests a jury trial for all claims, to the extent allowed by law.

Dated: January 21, 2026        By: */s/ Stephen J. Hulst*
                                    Stephen J. Hulst (P70257)
                                    RHOADES MCKEE, PC
                                    Counsel for Plaintiff
                                    55 Campau Avenue SW, Suite 300
                                    Grand Rapids, MI 49503
                                    sjhulst@rhoadesmckee.com